# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **v.** ) | |
| ) | **Criminal Action No. 2011-027** |
| ) | |
| **CHARLES BOYD ALLEN III and DONDRAE** ) | |
| **DEMAS JOHNSON,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

**Attorneys:**
**Allan F. John-Baptiste, Esq.,**
St. Croix, U.S.V.I.
> *For the United States*

**Emile A. Henderson, III, Esq.,**
St. Croix, U.S.V.I.
> *For the Defendant Charles Boyd Allen, III*

**Natalie Nelson Tang How, Esq.,**
St. Croix, U.S.V.I.
> *For the Defendant Demas Johnson*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant Dondrae Demas Johnson's "Motion to Dismiss for Lack of Venue," (Dkt. No. 66), which was joined by Defendant Charles Boyd Allen, III, (Dkt. No. 71). Defendants are charged in a nineteen-count Indictment with bank fraud, in violation of 18 U.S.C. § 1344; possession of a stolen security, in violation of 18 U.S.C. § 2315; and possession and utterance of a forged and/or counterfeit security, in violation of 18 U.S.C. § 513(a). Specifically, Defendants are accused of tendering stolen and/or counterfeit checks from, or purportedly from, a St. Croix, Virgin Islands branch of Banco Popular de Puerto

Rico to Wachovia Bank and Woodforest National Bank in North Carolina. The stolen and counterfeit checks were drawn from, or designed to be drawn from, the Banco Popular account of the Juan F. Luis Hospital on St. Croix, Virgin Islands.

Defendants argue that the District of the Virgin Islands is not the proper venue for the prosecution of these charges because Defendants' alleged illegal conduct occurred entirely in Georgia, where a check allegedly was stolen, and/or North Carolina, where the checks allegedly were tendered. Defendants further argue that their only connection to the Virgin Islands—that the checks involved in the alleged crimes were stolen or counterfeited from a Virgin Islands bank account of a Virgin Islands hospital—is too attenuated to justify prosecution in the Virgin Islands. The Government opposes the Motion, arguing that two of the offenses were "begun, continued, or completed" in the Virgin Islands within the meaning of 18 U.S.C. § 3237(a), and the third offense generated substantial contacts with the Virgin Islands, such that prosecution of all three offenses is proper in the District of the Virgin Islands.

For the reasons that follow, the Court finds that venue is proper in the Virgin Islands for the counts charging bank fraud under 18 U.S.C. § 1344 and possession of a stolen security under 18 U.S.C. § 2315. The Court finds, however, that venue does not lie in the Virgin Islands for the counts charging possession and utterance of a forged and/or counterfeit security under 18 U.S.C. § 513(a). Accordingly, the Court will grant in part and deny in part Defendants' Motion to Dismiss for Lack of Venue.

## I.      Applicable Legal Principles

A defendant in a criminal trial has a constitutional right to be tried where the crime was committed. U.S. CONST. art. III, § 2, cl. 3 (a criminal trial "shall be held in the State where the said Crimes shall have been committed."); U.S. CONST. amend. VI ("In all criminal prosecutions,

the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed."); *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999) (describing the "constitutional command" that a criminal defendant be tried in the district where the crime was committed); *United States v. Pendleton*, 658 F.3d 299, 302-03 (3d Cir. 2011) ("[A] defendant in a criminal trial . . . has a constitutional right to be tried in the district where his crime was committed.").

Rule 18 of the Federal Rules of Criminal Procedure echoes this requirement, providing that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. "Under Rule 18 of the Federal Rules of Criminal Procedure, Congress has the power to lay out the elements of a crime to permit prosecution in one or any of the districts in which the crucial elements are performed." *United States v. Perez*, 280 F.3d 318, 328-29 (3d Cir. 2002).

When "Congress has not designated venue in the relevant criminal statute," courts apply a two-part test set forth by the Supreme Court in *United States v. Rodriguez-Moreno*: "A Court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Pendleton*, 658 F.3d at 303 (quoting *United States v. Rodriguez-Moreno*, 526 U.S. at 279). To identify the conduct that "constitutes the offense," courts evaluate the elements of the offense in determining the *locus delicti*. *See United States v. Pendleton*, 658 F.3d at 304. In considering the elements of the offense, courts identify the conduct that Congress sought to prohibit. *Id.*; *United States v. Pendleton*, 2010 WL 427230, *3 (D. Del. 2010) (*aff'd. United States v. Pendleton*, 658 F.3d 299). ("[T]he *locus delicti* examination should reveal the behavior that Congress was attempting to proscribe . . . .").

3

"[I]n some cases the acts constituting a crime . . . occur in widely different localities." *United States v. Saavedra*, 223 F.3d 85, 89 (2d Cir. 2000). Congress, therefore, has the authority to identify a particular crime as a "continuing" offense—"an offense against the United States that spans multiple districts." 18 U.S.C. § 3237(a). Through a general venue statute codified in 18 U.S.C. § 3237(a), Congress has provided that when a continuing offense is committed, it "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." *Id.*[1] *See, e.g., United States v. Root*, 585 F.3d 145, 156 (3d Cir. 2009) ("Tax evasion is a continuing offense under 18 U.S.C. § 3237(a) . . . and Congress has provided that an offense against the United States that spans multiple districts 'may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.") (citing § 3237(a)); *United States v. King,* 604 F.3d 125, 139 (3d Cir. 2010) ("Because [interstate transportation to engage in sex with a minor] is a continuing offense, venue is appropriate in any district where [defendant] transported or abused [the victim].").

Accordingly, to decide whether venue is proper in the District of the Virgin Islands for each count of the Indictment, the Court "must undertake two related inquiries." *United States v.*

---

[1] Title 18 section 3237(a) provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).

*Saavedra*, 223 F.3d at 89. First, the Court will decide whether Defendants are charged with continuing offenses under § 3237(a) and, if so, whether the alleged offenses were "begun, continued, or completed" in the Virgin Islands. § 3237(a). Second, the Court will apply the constitutional requirement that the nature of the crimes alleged and the location of the acts constituting the crimes must be sufficiently linked to the Virgin Islands in determining if "the Constitution's commands respecting venue have been preserved" by prosecution in the Virgin Islands. *United States v. Saavedra*, 223 F.3d at 89 (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)).

"The Government bears the burden of proving venue by a preponderance of the evidence and venue must be proper for each count of the indictment." *United States v. Root*, 585 F.3d at 155. With the Government bearing the burden and the aforementioned legal principles in mind, the Court will determine if the District of the Virgin Islands is a proper venue for a trial on: (1) Defendant Allen's charges of bank fraud, in violation of 18 U.S.C. § 1344; possession of a stolen security, in violation of 18 U.S.C. § 2315; and possession and utterance of a forged security and possession and utterance of counterfeit securities, in violation of 18 U.S.C. § 513(a); and (2) Defendant Johnson's charges of bank fraud, in violation of 18 U.S.C. § 1344; and possession and utterance of counterfeit securities, in violation of 18 U.S.C. § 513(a). The analysis follows.

## II.   DISCUSSION

### A.  Venue for the Bank Fraud Offense

Counts seven through eleven of the Indictment, and counts sixteen through nineteen of the Indictment, charge Defendant Allen and Defendant Johnson, respectively, with bank fraud. Counts seven through eleven arise from Defendant Allen's alleged knowing and intentional execution of a "scheme to artifice and defraud a financial institution, that is Banco Popular de

5

Puerto Rico, by means of [a] materially false and fraudulent representation, that is, by depositing a forged check [and four counterfeit checks] purportedly issued by the 'Governor Juan F. Luis Hospital & Medical Center' into an account at Wachovia Bank." Indictment at 4-5. Counts sixteen through nineteen arise from Defendant Johnson's alleged knowing and intentional execution of a "scheme to artifice and defraud a financial institution, that is, Banco Popular de Puerto Rico, by means of materially false and fraudulent representations, that is, by depositing [four] counterfeit checks purportedly issued by the 'Governor Juan F. Luis Hospital & Medical Center' into accounts at Woodforest National Bank." *Id.* at 7.

### 1.    The Bank Fraud Statute

The governing bank fraud statute, Title 18, Section 1344, provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice[2]—

(1) To defraud a financial institution; or
(2) To obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

Shall be fined not more than $1,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The two subsections contained in the bank fraud statute are to be read conjunctively, in that a defendant must intend to defraud a financial institution under subsection (1) and must materially represent a falsehood under subsection (2) of the statute. *United States v. Thomas*, 315 F.3d 190, 196-97 (3d Cir. 2002) (establishing that subsections (1) and (2) are to be read conjunctively, and although the "'false or fraudulent pretenses, representations or promises'

---

[2] "The terms 'scheme' and 'artifice' are defined to include any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived." *United States v. Thomas*, 315 F.3d 190, 195 (3d Cir. 2002) (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987)).

are optional under the statute, a material representation is a required element of proof to show any violation of the bank fraud statute.") (quoting *Neder v. United States*, 527 U.S. 1, 25 (1999) ("[W]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.")). "But the *sine qua non* of a bank fraud violation, no matter what subdivision of the statute it is pled under, is the [specific] intent to defraud the bank." *United States v. Thomas*, 315 F.3d at 197.

This specific intent requirement is satisfied by an act that results in an actual loss for the bank, as well as one that puts the bank at a risk of loss. Thus, even when a defendant does not specifically intend to cause the bank a loss, the requirement is satisfied when the defendant makes a misrepresentation that exposes the bank to a potential loss. *United States v. Khorozian*, 333 F.3d 498, 505 (3d Cir. 2003); *United States v. Leahy*, 445 F.3d 634, 657 (3d Cir. 2006) ("[T]he loss or liability that must be caused by the scheme to defraud can either be an actual loss by the bank, or it can be a potential loss, what we termed in *Khorozian* as the 'risk of loss.'"); *United States v. Goldblatt*, 813 F.2d at 624 ("[I]t was not necessary for the Government to prove that the intended victim of the fraud was actually defrauded."). "Nor is financial loss the only cognizable injury under the bank fraud statute: we have recognized that exposing a bank to civil liability is sufficient under the bank fraud statute." *United States v. Leahy*, 445 F.3d at 657 (citing *United States v. Khorozian*, 333 F.3d at 505 n.5).

### 2.    Analysis

### a.  The Statutory Analysis

Bank fraud pursuant to 18 U.S.C. § 1344 is a continuing offense under § 3237(a). *United States v. Dupre*, 117 F.3d 810, 823 (5th Cir. 1997) ("Bank fraud . . . [is a] "continuing" offense[] for purposes of § 3237."); *United States v. Hubbard*, 889 F.2d 277, 280 (D.C. Cir. 1989) ("[A]s

7

part of the scheme [where defendant negotiated unauthorized checks in Maryland,] checks were taken from Century Bank in Washington, D.C.; [defendant] was later recruited to the scheme in D.C. Either of these events [both of which occurred in D.C.] is enough   under the venue provision, 18 U.S.C. § 3237."); *United States v. Bankole*, 39 F. App'x. 839, 841 (4th Cir. 2002) ("[T]he selection of venue in a bank fraud prosecution is governed by the general venue statute for federal criminal offenses, set forth in 18 U.S.C. § 3237(a)."); *United States v. Ritchie*, 1991 WL 256664, at *1 (9th Cir. 1991) ("The venue provision for offenses begun in one district and completed in another, such as . . . bank fraud . . .  provides that venue lies in any district in which the offense was begun, continued, or completed.") (citing § 3237(a)).

Because bank fraud is a continuing offense, venue is appropriate in any district where the "offense was begun, continued, or completed." 18 U.S.C. § 3237(a).  The Government argues that the bank fraud offense was completed in the District of the Virgin Islands because the "criminal undertaking that began in Atlanta, Georgia, and continued in North Carolina . . . [was completed in the Virgin Islands] since the debit transactions were or would have been completed from a bank account that was opened and maintained here [in the Virgin Islands.]" Gov.'s Opp. at 11. In support of its argument, the Government relies on the reasoning in *United States v. Bankole*, 39 F. App'x. 839, in which the Fourth Circuit held that venue was proper in the Eastern District of Virginia over a bank fraud charge relating to the fraudulent transfer of funds from Maryland to New Hampshire, where the debit signal was received and processed in Alexandria, Virginia. *Id.* The Court explained that evidence that the debit transaction occurred in Alexandria, Virginia "supports a finding that the bank fraud offense was *begun* in Maryland, *continued* into

8

New Hampshire, and *completed* in the Eastern District of Virginia." *Id.* (emphasis in original).[3]

Defendants respond with arguments focused on attempting to distance themselves and their conduct from the Virgin Islands in general, and the St. Croix branch of Banco Popular in particular. Defendant Johnson contends that "[a]lthough bank fraud is a continuing offense for purposes of venue, in the instant case, the alleged crime can be proven to have occurred entirely on the mainland[,] namely in the State of North Carolina." Def. Johnson's Reply at 4. In the same vein, Defendant Allen argues that venue is improper in the Virgin Islands because "Defendant Allen has had no contact with the Virgin Islands, and did not make any false or material misrepresentations to any financial institutions in the Virgin Islands." Def. Allen's Reply at 6. Defendant Allen maintains, instead, that the alleged criminal conduct was begun, continued and completed in either the state of Georgia or North Carolina, or both. *Id.* at 7.

Then, relying on *United States v. Thomas*, in which the Third Circuit held that, under the bank fraud statute, the bank must be the "target of deception" rather than "merely an 'unwitting instrumentality' in the fraud," 315 F.3d at 201, Defendant Allen further argues that Banco Popular in St. Croix was a "mere instrumentality" in the alleged scheme to defraud Wachovia Bank, which was the "direct target" of Defendant Allen's allegedly deceptive conduct. Def. Allen's Reply at 8-9. The "target of deception," according to Defendant Allen, was necessarily "the bank in North Carolina [Wachovia Bank] where he allegedly deposited and cashed the JFL [Juan F. Luis Hospital] check" rather than Banco Popular in St. Croix because "[n]othing was presented by Defendant Allen to Banco Popular or negotiated by him with Banco Popular." *Id.* at 8. Defendants Allen and Johnson also argue that *United States v. Khorozian* supports their

---

[3] The Court recognizes, of course, that *Bankole* is an unpublished decision and thus non-precedential in the Fourth Circuit.  4th Cir. R. 32.1.

position, because *Khorozian* requires that a defendant specifically intend to cause a loss or risk of loss to a bank. 333 F.3d at 505. Defendants contend that "the only bank who would have sustained a loss or a risk of loss would have been the bank in North Carolina" because that is the bank that Defendants allegedly defrauded and, accordingly, venue is proper only in North Carolina. Def. Allen's Reply at 9.

Defendants' arguments miss the mark. First, Defendant Allen's reliance on *United States v. Thomas* is misplaced. In *Thomas*, the defendant—a home health care aide—was authorized to cash pre-signed checks from the account of an elderly woman, for whom she provided care, to purchase groceries and household items for the woman. Instead, the defendant cashed the checks and kept the funds for her personal use. In reversing the defendant's conviction for bank fraud, the Third Circuit considered that the elderly account holder—not the bank—suffered the injury from the defendant's scheme; that through § 1344 "Congress sought to proscribe conduct that victimized *banks*"; and that "conduct, reprehensible as it may be, does not fall within the ambit of the bank fraud statute when the intention of the wrongdoer is not to defraud or expose the bank to any loss but solely to defraud the bank's customer." 315 F.3d at 199-200 (emphasis added). The Court concluded that, because the bank was not exposed to any actual or potential liability and the defendant's conduct victimized only the elderly account holder, the bank was not the target, but the "unwitting instrumentality" of the fraud. *Id*. at 201-02.

The circumstances here are markedly different. In *Thomas*, the defendant was *authorized* to cash pre-signed checks of the elderly account holder; and thus, any subsequent misuse of the funds did not constitute an injury suffered by the bank, but rather, one suffered by the account holder. Here, in stark contrast, Defendants are charged with depositing stolen or counterfeit checks. Defendant Allen allegedly deposited one forged and four counterfeit Banco Popular

checks into an account at Wachovia Bank and Defendant Johnson allegedly deposited four counterfeit Banco Popular checks into accounts at Woodforest National Bank. Indictment at 4, 5, 7. Given the absence of authorization from the account holder—here, the Juan F. Luis Hospital—it is the bank, not the account holder that was exposed to actual loss or risk of loss.

This was confirmed by the testimony of Ms. Tanya V. Perez Gutierrez, an Administrative Officer in the Legal Requirements Department of Banco Popular. Ms. Gutierrez testified that on April 5, 2010, a check drawn from a Banco Popular account on St. Croix—the check that Defendant Allen allegedly stole and uttered—was deposited into a Wachovia bank account in North Carolina. On April 6, 2010, monies were debited from the St. Croix branch of Banco Popular and credited to a Wachovia bank in North Carolina. 08/01/2012 Tr. at 81:16-23 (testimony of Ms. Gutierrez) ("It [the check] was deposited on April 5, 2012, on Wachovia Bank . . . On April 6, 2010, we received the electronic transmission . . . and proceeded to post it, the transaction for it to be paid at [the] St. Croix branch. [The monies were debited from] the Juan Luis Hospital account.").[4] Ms. Gutierrez further testified that upon presentation of a claim, the

---

[4] Ms. Gutierrez explained that "[w]hen a check from BPPR [Banco Popular de Puerto Rico] account is drawn, and is deposited into another financial institution, the other financial institution accepts the deposit and then sends electronic transmissions through the Federal Reserve Bank in Philadelphia." 08/01/2012 Tr. at 72:3-7 (testimony of Ms. Gutierrez). Then "[t]he Federal Reserve Bank of Philadelphia transmits the information to Banco Popular Puerto Rico." 08/01/2012 Tr. at 74:5-6. The information transmitted from the Federal Reserve Bank in Philadelphia includes "data and digital images of the checks that were negotiated or deposited on other financial institutions that belong to Banco Popular Puerto Rico accounts . . ." 08/01/2012 Tr. at 74:9-11.

"Once [Banco Popular] receive[s] the data information and images . . . all the data obtained from that system and the images are posted on Banco Popular Puerto Rico systems. So after posting each branch where checks were drawn will receive . . . electronic information stating that they have transactions that belong to their accounts that have to be debited from their accounts." 08/01/2012 Tr. at 74:5-6. The checks are then debited at the branch "where the accounts were opened"—here, in the Virgin Islands. 08/01/2012 Tr. at 75:12-24 ("Q: Let's say you have a

St. Croix branch of Banco Popular will have to reimburse the account holder—the Juan F. Luis Hospital—for $6,000, the total amount of the check. 08/01/2012 Tr. at 82:18-25 (explaining that the Banco Popular branch at Sunny Isles in St. Croix "will have to reimburse the customer for the total amount of the check" because "it is a counterfeit check, or was not authorized to be paid to that person.").[5] Accordingly, Defendant Allen's alleged conduct in depositing the allegedly stolen and forged check into a Wachovia Bank in North Carolina exposed the St. Croix branch of Banco Popular to financial loss.

Regarding the counterfeit Banco Popular checks—of which Defendant Allen is alleged to have deposited four into a Wachovia Bank in North Carolina and Defendant Johnson is alleged to have deposited four into Woodforest National Bank in North Carolina—Ms. Gutierrez testified that the checks were initially debited from the Banco Popular account on St. Croix, but then credited back to the St. Croix account after it was discovered that the checks were not authorized. *See, e.g.*, 08/01/2012 Tr. at 85:14-15 ("It was debited, but that same date it was credited because the check was not authorized to be paid."). Ms. Gutierrez explained that if the checks had not been identified as unauthorized, the St. Croix branch of Banco Popular would have been responsible for reimbursing the total of the counterfeit checks to the account holder— the Juan F. Luis Hospital. *See, e.g.*, 08/01/2012 Tr. at 85:19-20 ("Q: If this check had gone through, who would have been responsible for making payment on this check? A: The Sunny Isles branch [of Banco Popular] on St. Croix.").

---

check that's drawn on a bank account in the Virgin Islands, and that check is deposited into an account in the mainland, where does the debit for those monies take place? A: The debit will take place in the Virgin Islands.").

[5] Ms. Aishe Nesbett, the Director of Financial Services at the Juan F. Luis Hospital, testified that the Juan F. Luis Hospital emailed a loss claim statement for the $6,000 check to the St. Croix branch of Banco Popular on April 18, 2012. 08/03/12 Tr. at 18:18-22 (testimony of Ms. Nesbett).

Accordingly, in depositing the forged and counterfeit checks into banks in North Carolina, Defendants Johnson's and Allen's alleged conduct exposed the St. Croix branch of Banco Popular to financial loss—both actual and potential. As confirmed by Ms. Gutierrez's uncontradicted testimony, Defendants' argument under *Khorazian*—that "the only bank who would have sustained a loss or a risk of loss would have been the bank in North Carolina"—is simply wrong. Def. Allen's Reply at 9.

Defendants' additional argument under *Khorozian*—that venue is improper in the Virgin Islands because Defendants allegedly intended to defraud only Wachovia Bank and Woodforest National Bank in North Carolina where the checks were deposited—is also groundless. As an initial matter, common sense counsels against the conclusion that Defendants would not have intended to defraud Banco Popular in the Virgin Islands when they allegedly forged and/or counterfeited Banco Popular checks which bore on their face a Banco Popular account, and then negotiated those checks to receive funds. This is especially so when the only evidence proffered in support of this proposition is that the checks were deposited in North Carolina banks. Indeed, as the Supreme Court has observed, it is "common knowledge" that a check drawn on an out-of-state bank that is delivered to an in-state bank "must be sent to the drawee bank for collection." *Pereira v. United States*, 347 U.S. 1, 11 (1954). Moreover, Defendants offer no relevant legal precedent to support the proposition that by offering an unauthorized check drawn from an account at one bank for deposit into another bank, a defendant intends to defraud only the second bank. *Cf. United States v. Jimenez*, 513 F.3d 62, 72 (3d Cir. 2008) ("By depositing in one account checks drawn on other insufficiently funded accounts, the offender in a check-kiting scheme tricks *two or more banks* . . . .") (citing *United States v. Flowers,* 55 F.3d 218, 219 n.1 (6th Cir. 1995) (emphasis added)); *Pereira v. United States*, 347 U.S. at 11 (Because it is

13

"common knowledge" that an out-of-state check delivered to an in-state bank must be sent to an out-of-state bank for collection, "it follows that [the defendant] intended the in-state bank to send the check to the drawee bank.").

In any event, Defendants' attempt to enlist the reasoning in *Khorozian* as support for this proposition is unsound. In *Khorazian*, the Third Circuit rejected a defendant's argument that, because she was unaware of the counterfeit nature of $20 million in checks at the time she attempted to negotiate them, she lacked the requisite intent to harm the bank. *United States v. Khorazian*, 333 F.3d at 505. Because the defendant made misrepresentations to the bank regarding the identity of her companion and the purpose of her deposits, the Third Circuit "held the defendant[] guilty even though [she] did not specifically intend to cause the bank a loss . . . but rather intended only to make *misrepresentations* that made a loss more likely." *Id.* (citing *United States v. Moran,* 312 F.3d 480 (1st Cir. 2002) (emphasis in original)). "Thus, *Khorozian* clarified *Thomas'* s holding regarding the *mens rea* element of § 1344, making clear that intent to cause a loss or liability, or an intent to harm the bank, is not required. Rather, loss, or risk of loss, goes to the consequences of the fraudulent scheme, and it need not be intended to satisfy § 1344's *mens rea* requirement of a specific intent to defraud a bank." *United States v. Leahy*, 445 F.3d at 646.

Here, the record evidence establishes that the "consequences of the fraudulent scheme," *id.*, undoubtedly caused a loss or risk of loss to Banco Popular. Thus, Defendants' reliance on *Khorozian* for the proposition that venue is improper in the Virgin Islands because the bank fraud statute requires them to have specifically intended to defraud Banco Popular is misguided.

Finally, that Defendants Allen and Johnson were not physically present in the Virgin Islands does not preclude their prosecution in this District when their alleged bank fraud

14

threatened a Virgin Islands bank with actual or potential loss. *See United States v. Saavedra*, 223 F.3d at 94 (venue was proper in a district where an essential element of the criminalized conduct occurred, even though defendants were not physically present there); *United States v. Kim*, 246 F.3d 186, 193 (2d Cir. 2001) (finding venue for wire fraud charges proper in the Southern District of New York even though defendants were not physically present in that district); *United States v. Bankole*, 39 F. App'x. at 842 (citing *United States v. Wilson*, 262 F.3d 305, 320 (4th Cir. 2001) ("[T]here may be more than one appropriate venue for . . . [prosecuting the offense of bank fraud], and a particular venue is not improper simply because the defendant was never physically present there.")).

In view of the foregoing, the Court concludes that the Government has proven by a preponderance of the evidence that the bank fraud offense was "completed" in the Virgin Islands under § 3237(a). *See United States v. Root*, 585 F.3d at 155.

### b.  The Constitutional Analysis

Like the statutory continuing offense analysis, the constitutional analysis also points to the propriety of venue in the Virgin Islands. *See United States v. Saavedra*, 223 F.3d at 90 ("Notwithstanding Congress' power to define continuing offenses having the potential for multiple venues, the Supreme Court has repeatedly recognized that a cautious interpretive approach is "more consonant with the considerations of historic experience and policy which underlie [the venue] safeguards in the Constitution." (citing *United States v. Johnson*, 323 U.S. 273, 275 (1944)).

In considering the "conduct constituting the offense" and discerning the "location of the commission of the criminal acts," *United States v. Pendleton*, 658 F.3d at 303, the Court looks to the requirements of the bank fraud statute that "a defendant must execute, or attempt to execute,

15

a scheme or artifice, intended to victimize a federal bank or federally insured bank by causing it an actual or potential loss of its own funds." *United States v. Thomas*, 315 F.3d at 206.  Here, Defendants allegedly executed a scheme to victimize Banco Popular—a bank in the Virgin Islands—by forging and/or counterfeiting checks from that Virgin Islands bank and tendering them to obtain funds from an account holder at that bank. As supported by the testimony of Ms. Gutierrez, Defendants' alleged conduct, as discussed above, exposed Banco Popular to actual loss or risk of loss. Accordingly, an essential element of the offense—the victimization of Banco Popular through the alleged execution of a fraudulent scheme—and the precise conduct that Congress sought to prohibit occurred in the Virgin Islands.

In sum, the Court finds that the Government has proven by a preponderance of the evidence that, under both the statutory and constitutional analyses, venue for the offense of bank fraud as pleaded in the Indictment is proper in the Virgin Islands.

**B.        Venue for the Offense of Possession of a Stolen Security**

Count one charges Defendant Allen with "possess[ion] and dispos[ition] of a stolen security [in violation of 18 U.S.C. § 2315], that is, Check No. 0041634, of a value of $5,000 or more, which had crossed a state boundary after being stolen . . . ." Indictment at 1.

**1.        The National Stolen Property Act**

Title 18 U.S.C. § 2315 prohibits the possession and disposition of a stolen security. It provides in pertinent part:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken; or

16

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited . . .

> Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2315. Section 2315 was enacted as part of the National Stolen Property Act, which was enacted to "discourag[e] the interstate transportation and recei[pt] of stolen property . . . ," *United States v. Moore*, 571 F.2d 154, 155 (3d Cir. 1978), and to "assist the States' efforts to foil the 'roving criminal,' whose movement across state lines stymied local law enforcement officials." *Dowling v. United States*, 473 U.S. 207, 219-20 (1985) (citing 78 Cong. Rec. 2947 (1934) (statement of Attorney General Cummings)). The "Act prohibits the transportation [and receipt] in interstate commerce of forged checks." *United States v. McElroy*, 644 F.2d 274, 275 (3d Cir. 1981).

"Congress [first] enacted § 2314 [a companion statute] as an extension of the National Motor Vehicle Theft Act . . . to supplement the efforts of the States to combat automobile thefts [and to] fill in the enforcement gap by "strik[ing] down State lines which serve as barriers to protect [these interstate criminals] from justice." *Dowling v. United States*, 473 U.S. at 219-20 (quoting 58 Cong. Rec. 5476 (1919) (statement of Rep. Newton).[6] In 1934, Congress

---

[6] 18 U.S.C. § 2314 provides in relevant part:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any

"'extend[ed] the provisions of the National Motor Vehicle Theft Act to other stolen property' by means of the National Stolen Property Act," and in so doing "acted to fill an identical enforcement gap." *Dowling v. United States*, 473 U.S. at 220; *see* S. Rep. No. 538, 73d Cong., 2d Sess., 1 (1934); H.R. Rep. No. 1462, 73d Cong., 2d Sess., 1 (1934); H. R. Conf. Rep. No. 1599, 73d Cong., 2d Sess., 1, 3 (1934). Specifically, through the National Stolen Property Act, "Congress had in mind preventing further frauds or the completion of frauds partially executed." *United States v. Sheridan*, 329 U.S. 379, 385 (1946).

## 2.      Analysis

### a.   The Statutory Analysis

Possession of a stolen security in violation of 18 U.S.C. § 2315 is a continuing offense under 18 U.S.C. § 3237(a). *See United States v. Engle*, 676 F.3d 405, 417 n.8 (4th Cir. 2012) (explaining that § 3237(a) "was enacted  . . . to deal precisely with this interstate 'process of

---

person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any traveler's check bearing a forged countersignature; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof--

Shall be fined under this title or imprisoned not more than ten years, or both.

wrongdoing,'" that is, receiving "goods which had crossed state lines after being stolen" in violation of 18 U.S.C. § 2315). This is confirmed by the legislative history of § 2315, which illustrates Congress' intent to include the offense within the venue provisions of § 3237. *United States v. Morgan*, 393 F.3d 192, 201 (D.C. Cir. 2005) (noting the Second Circuit's determination that "the legislative history explicitly states that Congress intended  § 2315 . . . to be covered by § 3237."); *United States v. DeKunchak*, 467 F.2d 432, 437 (2d Cir. 1972) ("The statutory history of both sections [of 18 U.S.C. § 3237(a)] supports the proposition that the intent of Congress was to include a section 2315 offense within this general venue section.").[7]

Because the receipt of stolen goods in violation of § 2315 is a continuing offense, the crime need not be prosecuted where the receipt of the stolen security occurs. *See United States v. Melia*, 741 F.2d 70, 72 (9th Cir. 1984) (rejecting the argument that a defendant convicted of a § 2315 violation had a constitutional right to be tried in the state where he received the stolen goods). Thus, the question before the Court is whether the § 2315 offense was "begun, continued, or completed" in the District of the Virgin Islands in accordance with § 3237(a). *See* § 3237(a).

---

[7] Section 2315 was formerly codified in 18 U.S.C. §§ 413-419, and § 418—the Special Venue section—included the language "[a]ny person violating [sections 413-419 of this title] may be tried in any district from, into, or through which such goods, wares, or merchandise . . . have been transported or removed." *See United States v. DeKunchak*, 467 F.2d at 437-38 (quoting Act of May 22, 1934 Ch. 33, 48 Stat. 794). In the 1948 recodification of the statute, § 2315 replaced § 416, and the Special Venue section embodied in § 418 was eliminated and "'completely covered by section 3237 of this title.'" *Id.* at 438; *see also United States v. Melia*, 741 F.2d 70, 72 (4th Cir. 1984) ("Section 418 of title 18 U.S.C., 1940 ed., relating to venue, was omitted as completely covered by section 3237 of this title." (quoting H.R. Rep. No. 304, 80th Cong., 1st Sess. A146 (1947)). Accordingly, "[t]he recodification of 1948 and the enactment of § 3237 were not intended to change the law pertaining to venue of a prosecution for the receipt, concealment, and disposition of stolen goods transported in interstate commerce." *United States v. Melia*, 741 F.2d at 72.

The Government argues that venue in the Virgin Islands is proper on two grounds. First, the Government relies on the second paragraph of § 3237(a), which provides that "[a]ny offense involving the use of the mails . . . is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter . . . moves." § 3237(a). Here, the Government argues that, because the check was sent from the Virgin Islands to Georgia through interstate mail, the offense *began* under § 3237(a) with the use of the mails "which moved from or through the Virgin Islands." Gov.'s Opp. at 9. Defendant Allen responds that the § 2315 offense did not begin until the check was allegedly stolen in Georgia and transported to North Carolina. Because "[t]here was nothing unlawful about the mailing of the check from the Virgin Islands to Ross [the intended recipient] in the state of Georgia," Defendant Allen argues that the continuing offense of possessing a stolen security could not have begun in the Virgin Islands. Def. Allen's Reply at 6.

By its first argument, the Government urges the Court to conclude that the § 2315 offense began in the Virgin Islands, although the alleged prohibited conduct did not occur until after the check was mailed from the Virgin Islands to Georgia. The Court declines the Government's invitation to so conclude. Here, the Juan F. Luis Hospital in the Virgin Islands mailed the check to the intended recipient—Dr. William Ross—in Georgia. As Defendant Allen correctly notes, nothing in the record suggests that any illegality was associated with the mailing of the check from the Virgin Islands to Georgia.[8]

The Court recognizes that, in some instances, venue for a continuing offense may lie in a district where a defendant "executed the measures which caused the offenses to be

---

[8]  Ms. Nesbett, Director of Financial Services at the Juan F. Luis Hospital, testified that the hospital sent Dr. William Ross a check for $6,000 to Georgia through the "regular mail." 08/03/2012 Tr. at 7:15-25.

consummated" even when the proscribed activity did not occur there. *United States v. Goldberg*, 830 F.2d 459, 465-66 (3d Cir. 1987) (finding venue proper in the Eastern District of Pennsylvania over a continuing offense because the defendant—a prisoner incarcerated in that District—placed telephone calls which put into motion the offense and "performed all the acts necessary to accomplish" the act); *see also United States v. Donahue*, 885 F.2d 45, 49  (3d Cir. 1989) (finding venue in the Middle District of Pennsylvania proper over the continuing offense of money laundering when a defendant repeatedly "boarded a plane in Pennsylvania [with large sums of money], changed planes in Florida [where he failed to file the requisite financial paperwork at Customs], then flew to the Caymen Islands," because although the paperwork violation occurred in Miami, the offense "began in the Middle District of Pennsylvania, where he boarded the first of the successive flights which ultimately would land him in Grand Cayman Island.").

The case at bar is distinguishable, however, because Defendant Allen is not accused of any involvement in, or impropriety in connection with, the mailing of the check from the Virgin Islands to Georgia. Indeed, the Government states that Dr. Ross and his neighbors in Atlanta, Georgia were victimized by mail thefts during the same period that the check was mailed, thus intimating that the check was stolen in Georgia. Gov.'s Opp. at 1. Because the check was mailed from the Virgin Islands before the beginning of any alleged criminal activity, the Court rejects the Government's argument that the offense "involve[ed] the use of the mails" under the second paragraph of § 3237. *See United States v. Morgan*, 393 F.3d at 199 ("[W]e refuse to countenance the Government's theory that [defendant's] receipt of the computer was an 'offense involving' transportation in interstate commerce simply because the computer traveled across state lines before reaching [defendant]. It is not surprising that no court has ever approved the theory

21

submitted by the Government here, for such an interpretation would result in a stunning expansion of permissible venue sites under § 3237 ¶ 2.").

The Government presented a second argument at the August 1, 2012 hearing, contending that the stolen security entered interstate commerce *after* Defendant Allen allegedly deposited it at Wachovia Bank in North Carolina and that the *disposition* of the check—which set into motion the debiting of funds from the Virgin Islands—*completed* the offense in the Virgin Islands under § 3237(a). Under this theory, the Government argues that venue in the Virgin Islands is proper under the first and second paragraphs of § 2315. The Court agrees.

The first paragraph of § 2315 proscribes the "receiv[ing], possess[ing] . . . or dispos[ing] of any securities . . . of the value of $5,000 or more . . . which have crossed a State or United States boundary after being stolen." § 2315. The Government argues that the check crossed a state boundary *after* being stolen when the Defendant allegedly caused Wachovia Bank in North Carolina to convert the check into an electronic debit signal that was sent to the Virgin Islands, where the crime was completed. The second paragraph of § 2315 prohibits the "receiv[ing] . . . possess[ing] . . . or dispos[ing] of any securit[y] . . . moving as, or which are a part of, or which constitute interstate or foreign commerce . . . ." *Id.* In a similar vein, the Government argues that the check was moving in interstate commerce when Defendant Allen allegedly disposed of it, causing Wachovia Bank in North Carolina to send an electronic signal to the Virgin Islands, completing the crime there.

The Supreme Court has held that a defendant "caused" a check to be put into interstate commerce when he deposited a check from an out-of-state bank account into an in-state bank because the check had to be sent back to the out-of-state bank. *Pereira v. United States*, 347 U.S. at 11 ("When [a defendant] delivered the check, drawn on an out-of-state bank, to the [in-state]

22

bank for collection, he 'caused' it to be transported in interstate commerce. It is common knowledge that such checks must be sent to the drawee bank for collection, and it follows that [the defendant] intended the [in-state] bank to send this check across state lines."). Although the Supreme Court's analysis in *Pereira* was in relation to § 2314—the companion section to § 2315 which prohibits the *transportation* of stolen goods rather than the *possession and disposition* of stolen goods proscribed by § 2315—the Third Circuit has applied the reasoning in *Pereria* to other criminal statutes which have an interstate commerce element. *See United States v. Andrews,* 681 F.3d 509, 529 (3d Cir. 2012) (citing *Pereria* to find that the wire fraud statute "does not require that the defendant himself sent the communication or that he intended that interstate wire communications would be used" because "the use of interstate wire communications was reasonably foreseeable."); *United States v. McElroy*, 644 F.2d at 277 ("Most opinions hold that the interstate commerce requirement is satisfied if, after a defendant negotiates a forged check, it travels interstate in the bank collection process."). The Third Circuit has explained that "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used" for the interstate commerce element of the wire fraud statute.  *United States v. Bentz,* 21 F.3d 37, 40 (3d Cir. 1994).

At the evidentiary hearing, Ms. Gutierrez testified that when Defendant Allen disposed of the stolen check, an electronic debit signal was sent from North Carolina, through Philadelphia, through Puerto Rico, to the Virgin Islands. 08/01/2012 Tr. at 72:3-11; 74:5-6; 129:23; 130:4-5 ("When a check from a BPPR [Banco Popular de Puerto Rico] is drawn, and is deposited into another financial institution, the other financial institution accepts the deposit and then sends electronic transmissions through the Federal Reserve Bank in Philadelphia . . . [which then]

23

transmits the information to Banco Popular Puerto Rico [headquarters] in Puerto Rico [which then sends an electronic transmission to the branch, here, the St. Croix branch.]"   That the security was sent across state lines in the form of an electronic signal rather than a paper check is of no moment.  *See United States v. Goldberg*, 830 F.2d at 466 (finding in the context of a wire transfer of funds under § 2314 that "[i]t is a fact of life in today's highly computerized and technological society that transfers of money between accounts are generally accomplished electronically. It is difficult to imagine a bank, that is directed by a customer to transfer . . . [funds] doing it any other way than electronically.");[9] *United States v. Kroh*, 896 F.2d 1524, 1529 (8th Cir. 1990) (noting that the Second, Third and Tenth circuits have rejected the argument that electronic credits and debits do not constitute stolen or fraudulently obtained property under § 2315 [and § 2314] and joining this consensus on the grounds that "electronic signals in this context are the means by which the funds are transported." (citing *United States v. Gilboe*, 684 F.2d 235 (2d Cir. 1982)).

In deciding whether the continuing offense was "begun, continued, or completed" in the District of the Virgin Islands, *see* 18 U.S.C. § 3237(a), the Court considers that depositing an out-of-state check to an in-state bank causes the bank to send the check across state lines, *Pereira v. United States*, 347 U.S. at 11; and that "so long as the transfer of goods can be considered a continuation of the movement that began outside the state, the interstate commerce

---

[9] Although in *United States v. Goldberg*, the Third Circuit was interpreting § 2314, the reasoning behind the Court's findings applies with equal force to § 2315. The "tangible property argument"—that wire transfers of money do not fall under the National Stolen Property Act because those transfers are not physical property—has been rejected by the Second, Third, Eighth and Tenth Circuits because "[t]hese statutes [§§ 2314 and 2315] can properly cover wire transfers if such transfers serve to transfer the fruits of prohibited fraudulent acts." *United States v. Kroh*, 896 F.2d at 1529.

jurisdictional requirement [of § 2315] is fulfilled," *United States v. Garber*, 626 F.3d 1144, 1149-50 (3d Cir. 1980). Accordingly, upon consideration of the foregoing and the evidence of record, the Court concludes that the Government has proven by a preponderance of the evidence that the 18 U.S.C. § 2315 offense—possession and disposition of a stolen security—was "completed" in the Virgin Islands for purposes of the § 3237(a) venue analysis.[10]

### b. The Constitutional Analysis

As with the statutory continuing offense analysis, the constitutional inquiry also leads to a conclusion that supports the propriety of venue in the Virgin Islands. *See United States v. Saavedra*, 223 F.3d at 89 (following a § 3237(a) analysis with a constitutional analysis "to ensure that the policies and considerations underlying the Constitution's commands respecting venue have been preserved."). This conclusion follows from the application of the two-pronged approach set forth in *Rodriguez-Moreno*. *See United States v. Pendleton*, 658 F.3d at 303 ("Where, as here, Congress has not designated the venue in the relevant criminal statute, we employ the two-prong approach set forth in *Rodriguez-Moreno*.").

In identifying the conduct that constitutes the offense, the Court looks to the definition and elements of the possession of a stolen security offense. *See id.* To support a conviction under [the first paragraph of] 18 U.S.C. § 2315, the government must prove that (1) the property was stolen; (2) after the property was stolen, it crossed a United States boundary; (3) the defendant

---

[10] The Court concludes that the offense was "completed" in the Virgin Islands solely for the purposes of the § 3237(a) venue analysis precipitated by Defendant's pretrial Motion to Dismiss, mindful that, at trial, the interstate commerce element commerce must be proven beyond a reasonable doubt to the factfinder. *See, e.g. Corey v. United States*, 305 F.2d 232 (9th Cir. 1962) (*certiorari* denied, 371 U.S. 956 (1963) ("Once an interstate journey has begun [for the purposes of § 2315], the question of whether it has come to an end is generally one of fact for the jury."); *United States v. Gardner*, 516 F.2d 334, 344 (7th Cir. 1975) ("18 U.S.C. § 2315 requires that the stolen securities which [the defendant] received . . . constituted interstate commerce . . . and whether they did is a determination for the jury.").

possessed, concealed, or stored the property; (4) the defendant knew the property was stolen; and (5) the property was worth $5,000 or more." *United States v. Mardirosian*, 602 F.3d 1, 10 (1st Cir. 2010). "To prove a violation [under the second paragraph] of 18 U.S.C. § 2315, the Government must establish (a) that the goods received had been stolen, (b) that the goods were of a value of at least $5,000, (c) that the goods were "moving as," were "part of" or "constituted" interstate commerce, and (d) that the defendant knew the goods had been stolen." *United States v. Tashjian*, 660 F.2d 829, 839 (1st Cir. 1981). In assessing the conduct that Congress sought to proscribe, the Court also considers the legislative intent—that through the National Stolen Property Act, "Congress had in mind preventing further frauds or the completion of frauds partially executed," *United States v. Sheridan*, 329 U.S. 379, 385 (1946), including, "the transportation [and receipt] in interstate commerce of forged checks." *United States v. McElroy*, 644 F.2d at 275.

Here, the interstate theft scheme—the conduct that Congress sought to prohibit under § 2315—involved the alleged stealing of funds from a Virgin Islands account at a Virgin Islands bank through the use of an allegedly stolen Virgin Islands security which was sent to the Virgin Islands via an electronic debit signal, where the debiting of the funds from the Virgin Islands account occurred. An essential element of the offense—caused by Defendant Allen's alleged disposition of the check—was the traveling across state lines or moving in interstate commerce, *including* to the Virgin Islands, of the Virgin Islands security after its alleged theft in Georgia.

Based on the foregoing, the Court finds that the Government has proven by a preponderance of the evidence that, under both the statutory and constitutional analyses, venue for the offense of possession and disposition of a stolen security, as pleaded in the Indictment, is proper in the Virgin Islands.

26

**C.      Venue for the Offense of Possession and Utterance of a Forged/Counterfeit Security**

Count two of the Indictment charges Defendant Allen with possession and utterance of a forged security, and counts three through six, and counts twelve through fifteen, charge Defendant Allen and Defendant Johnson, respectively, with possession and utterance of counterfeit securities. Count two arises from Defendant Allen's alleged "knowing[] and intentional[] possess[ion] and utter[ance of] a forged [Virgin Islands] check"—check number 0041634 in the amount of $6,000—"with intent to deceive Wachovia Bank, by depositing [the check] . . . into such bank" in North Carolina. Indictment at 2. Counts three through six arise from Defendant Allen's alleged "knowing[] and intentional[] possess[ion] and utter[ance of] counterfeit [Virgin Islands] checks"—check number 0044527 in the amount of $6,435.00; check number 0044681 in the amount of $6,120.00; check number 0044927 in the amount of $7,635.00; and check number 0045324 in the amount of $7,487.00—"with intent to deceive Wachovia Bank, by depositing the checks" into that bank in North Carolina. *Id*. at 3.

Counts twelve through fifteen arise from Defendant Johnson's alleged "knowing[] and intentional[] possess[ion] and utter[ance of] counterfeit [Virgin Islands] checks"—check number 0044391 in the amount of $6,584.00; check number 0044217 in the amount of $6,120.00; check number 0045249 in the amount of $3,635.00; and check number 0044927 in the amount of $7,635.00—"with intent to deceive Woodforest National Bank, by depositing the checks" into that bank in North Carolina. *Id*. at 6.

### 1.      The Counterfeiting and Forgery Statute

The governing counterfeiting and forgery statute provides in relevant part:

Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an

> organization, with intent to deceive another person, organization, or government
> shall be fined under this title or imprisoned for not more than ten years, or both.

18 U.S.C. § 513(a).

The legislative history of § 513(a) is scarce. *United States v. Hunt*, 456 F.3d 1255, 1268 (10th Cir. 2006) ("The legislative history of the Comprehensive Crime Control Act of 1984 says little about § 513 . . . ."); *United States v. Thomas*, 54 F.3d 73, 80 (2d Cir. 1995) ("[T]he legislative history of the section [§ 513] is more confusing than enlightening."). However, the legislative history noted that "[p]resent Federal law is inadequate to combat widespread fraud schemes involving the use of counterfeit State and corporate securities" and that § 513 "would remedy a gap in existing statutes relating to the forging of endorsements on United States securities." *See United States v. Prosperi*, 201 F.3d 1335, 1343 (11th Cir. 2000); *United States v. Hunt*, 456 F.3d at 1268 (both citing S. Rep. No. 98-225 at 371-72 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3512-13)).

## 2.    Analysis

### a.  The Constitutional Analysis

The offense of possessing or uttering a counterfeit security under 18 U.S.C. § 513(a) is a "single act crime" rather than a "continuing offense" because "[o]ffering the forged writing is the single unequivocal act which completes the offense." *United States v. Rodriguez*, 465 F.2d 5, 11 (2d Cir. 1972). As explained by the Second Circuit:

> On its face there is certainly no indication that Congress intended to create an
> offense "the locality of . . . [which] shall extend over the whole area through
> which force propelled by an offender operates." *United States v. Johnson*, 323
> U.S. 273, 275 (1944). By its terms, the statute merely prohibits uttering and
> publishing forged instruments with the intent to defraud the United States;
> offenses that are complete when the instrument is offered. *United States v.
> Sullivan*, 406 F.2d 180 (2d Cir. 1969). There is no intimation that an offender can
> be tried wherever a forged check might be found after it has been placed in

circulation. No legislative history . . . has been discovered which indicates that such a result was intended.

*United States v. Rodriguez*, 465 F.2d at 10-11.

The Government concedes that "the offense of 'Possession and Utterance of a Forged or Counterfeit Security' is not a 'continuing offense' under 18 U.S.C. § 3237." Gov.'s Opp. at 5. Nonetheless, the Government argues that "under the substantial contacts rule, the District of the Virgin Islands is the correct venue to prosecute the defendants . . . based on the elements and nature of the charge, the locus and effect of the defendants' criminal conduct, and the suitability of the Virgin Islands district for fact-finding." *Id.* (citing *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)).

Specifically, the Government argues that venue is proper in the District of the Virgin Islands because one of the essential elements that the Government is required to prove is that the counterfeit or forged security "was that of a State," and the statute defines a "State" as including the District of the Virgin Islands.  Gov.'s Opp. at 6 & n.2. Additionally, the Government argues that "the locus of the defendants' conduct is in the Virgin Islands since . . . there is no doubt that the conduct of the defendants had an effect on the Virgin Islands, since both J.F.L. [Juan F. Luis Hospital] and Banco Popular's St. Croix branch has or will experience a financial loss as a result of the counterfeit checks that were deposited at the banks in North Carolina." *Id*. at 7. Finally, the Government argues that venue is proper in the Virgin Islands because it is "suitable for fact finding, because the lead case prosecutor and case agent reside[] and work[] here, J.F.L. and the Banco Popular Branch office where J.F.L. opened and maintains its account are located here, and many of their representatives and/or potential witnesses live and work here." *Id*. at 8.

Defendant Allen replies, *inter alia*, that, while the checks allegedly possessed and uttered

by Defendant Allen were those of the Virgin Islands—a state within the meaning of the statute—there was "absolutely no conduct in the Virgin Islands that would give the Virgin Islands the authority to prosecute this case"; thus, there were no substantial contacts with the Virgin Islands. Def. Allen's Reply at 3. Accordingly, Defendant Allen contends that the *locus* of his conduct could not have been in the Virgin Islands. *Id.* at 4. Defendant Allen also argues that the location of the lead case agent and prosecutor is not dispositive, especially when the alleged conduct giving rise to the charges occurred outside the Virgin Islands. *Id*. at 5. To the same end, Defendant Johnson argues that Banco Popular "has nothing to do with the essential conduct element that the USA must prove." Def. Johnson's Reply at 5.

"Where, as here, Congress has not designated the venue in the relevant criminal statute, [the Court] employ[s] the two-pronged approach set forth in *Rodriguez–Moreno*." *United States v. Pendleton,* 658 F.3d at 303*.* In *Rodriguez-Moreno*, the Supreme Court provided that "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." 526 U.S. at 279. "To identify which conduct 'constitutes the offense,' we look to [defendant's alleged crime]." *United States v. Pendleton,* 658 F.3d at 303; *United States v. Scott*, 270 F.3d 30, 35 (1st Cir. 2001) ("The nature of the crime of [§ 513(a)] forgery [for venue purposes] is determined by the statutory definition[.]").

Section 513(a) provides in relevant part: "[w]hoever makes, utters or possesses a counterfeited [or forged] security of a State . . . or of an organization, with intent to deceive another person, organization, or government shall be [in violation of this title]." § 513(a).[11] The

---

[11] Section 513(c)(4) defines "organization" as an entity which "operates in or the activities of which affect interstate or foreign commerce[.]" § 513(c)(4).

elements of the § 513(a) offense are that a defendant (1) made, uttered, or possessed (2) a counterfeit security (3) of a State or organization (4) with intent to deceive another person, organization, or government. *United States v. Chappell*, 6 F.3d 1095, 1098 (5th Cir. 1993); *see, e.g., United States v. Mayo*, 192 F. App'x. 879, 883 (11th Cir. 2006).[12]

Here, the crimes described in Counts two, three through six, and twelve through fifteen—as defined by § 513(a)—prohibit "uttering and publishing forged instruments with the intent to defraud [a person, organization, or government]; offenses that are complete when the instrument is offered." *United States v. Rodriguez*, 465 F.2d at 10-11 (quoting *United States v. Sullivan*, 406 F.2d 180). Unlike continuing offenses, which "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed," 18 U.S.C. § 3237(a), the venue for single act offenses is more limited: "Venue does not necessarily lie, however, in every district where an essential element of the offense has transpired. Rather, venue is limited to the place 'where the criminal act is done' . . . . [T]his requirement . . . limit[s] venue in a criminal trial to the place of the essential *conduct* elements of the offense." *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000) (citing *United States v. Anderson*, 328 U.S. 699, 705 (1946); *United States v. Cabrales*, 524 U.S. at 7-8).

By the Government's own admission, "[t]he actual crime of the offense didn't occur here

---

[12] The fourth element of the § 513(a) offense has been interpreted in some Circuits to include deceit of the security's issuer as well as of "another person, organization, or government." *See United States v. Thomas,* 54 F.3d 73, 80 (2d Cir. 1995) ("Given that [congressional] goal ["of remedy[ing] a gap in existing statutes relating to the forging of endorsements on United States securities," S. Rep. at 371, *reprinted in* USCCAN at 3512], we decline to conclude that § 513 does not reach a defendant's forgery of a security with intent to defraud the security's issuer."); *United States v. Blood*, 435 F.3d 612, 619, 620 (6th Cir. 2006) ("[W]e ultimately agree that § 513(a)'s intent requirement includes deception aimed at the security's purported issuer . . . . There is nothing in the [legislative history] to suggest that the deceptive intent must be aimed at an entity other than the issuing body . . . . [T]he remedial, gap-closing focus of § 513 indicates that such deceptive intent was meant to be captured by § 513.").

[in the Virgin Islands]." *See* 08/03/2012 Tr. at 140:15-16. Instead, it is undisputed that the alleged utterance of the forged and/or counterfeit security—the criminal act—occurred entirely in North Carolina. The alleged "utterance" in this single act crime has been described as the "single unequivocal act which completes the offense." *Rodriguez*, 465 F.2d at 11. Because North Carolina is the place where the essential conduct element of this single act offense occurred, the Court finds that the Government has failed to prove by a preponderance of the evidence that venue for the § 513(a) offense is proper in the Virgin Islands. *See, e.g., United States v. Cabrales*, 524 U.S. at 6-7 (finding that venue for the single act offense of money laundering was improper in Missouri when the proscribed financial transactions occurred entirely in Florida); *United States v. Villarini*, 238 F.3d 530, 535 (4th Cir. 2001) ("[B]oth *Cabrales* and *Rodriguez-Moreno* clearly establish that the mere fact that proceeds were criminally generated in a particular district is not sufficient, standing alone, to establish proper venue in that district for a charge of laundering the money [a single act offense]."); *United States v. Stewart*, 256 F.3d 231, 240 (4th Cir. 2001) (finding venue in the Eastern District of Virginia improper over the single act offense of money laundering when "the location of [defendant's] charged and completed overt acts comprising his money laundering offenses consisted solely of his withdrawing funds in California, albeit funds that were derived from illegal activity in Virginia.").

### b. The Substantial Contacts Test

While conceding that "the physical act did not happen here [the Virgin Islands]," the Government argues that venue is nonetheless proper in the Virgin Islands because "the effects were felt here [the Virgin Islands]," 08/03/2012 Tr. at 140:12-13, 141:3-4, and an element of the offense implicated the Virgin Islands—namely "the counterfeit or forged security was that of a State," and the statute defines a 'state' as including the District of the Virgin Islands. Gov.'s

32

Opp. at 6 & n.2. In contending that these two factors make venue in the Virgin Islands proper, the Government urges that the Court employ a "substantial contacts" test, which some Circuits have adopted in aiding the *locus delicti* determination. "[T]h[is] test [for constitutional venue] is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding[.]" *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985); *United States v. Cofield*, 11 F.3d 413, 417 (4th Cir. 1993) (quoting the substantial contacts factors from *Reed* to support the proposition that there is more than one method to discern the location of a crime); *United States v. Zidell*, 323 F.3d 412, 423 (6th Cir. 2003) ("More generally, we have evaluated challenges to venue under a 'substantial contacts' test, which calls for consideration of 'the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding.'") (citation omitted); *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007) ("We shall examine [the two-part inquiry set forth by the Supreme Court] . . . . [H]owever, we shall not forget that the Supreme Court has referred to these two factors simply as a guide, not a rigid test . . . 'Rather the test is best described as a substantial contacts rule . . . .'") (quoting *United States v. Reed*, 773 F.3d at 481).

The Third Circuit has applied the substantial contacts test under a "causation theory" of venue to a continuing offense, but declined to decide whether the "causation theory" of venue— which included the substantial contacts test—is properly applied to a single-act offense. *See United States v. Goldberg*, 830 F.2d at 465 (citing the language from *United States v. Reed* regarding the substantial contacts rule in holding that venue in the Eastern District of Pennsylvania was appropriate when a defendant in that district caused an illegal wire transfer

from a prison telephone); c*f. United States v. Turley*, 891 F.2d 57, 61 (3d Cir. 1989) (finding it unnecessary to decide whether the causation theory adopted in *United States v. Goldberg*–which included a consideration of the *Reed* factors—also applies to a single-act offense).

Thus, the Third Circuit has not decided the precise issue before the Court regarding the applicability of the substantial contacts test as an aid in the *locus delecti* determination for a single act offense, and a clear picture does not emerge from a review of other Circuits.[13] In any event, even assuming that the substantial contacts test applies to the single act § 513(a) offense, the Court concludes—as with the two-part constitutional analysis, but based on the four-factor substantial contacts analysis discussed below—that venue in the Virgin Islands is improper.

i.   The Elements and Nature of the Crime

The elements of the § 513(a) offense are that a defendant (1) made, uttered, or possessed (2) a counterfeit security (3) of a State or organization (4) with intent to deceive another person, organization, or government. *United States v. Chappell*, 6 F.3d at 1098; *see, e.g., United States v. Mayo*, 192 F. App'x. at 883.

The Government argues that the third element—that the counterfeit security be "of a State"—involves the Virgin Islands because Defendants allegedly used a counterfeit security of a Virgin Islands bank. Gov's Opp. at 6. However, as noted earlier, the Court considers that the utterance of the forged or counterfeit security is the essential conduct element of the § 513(a) offense. The performance of the act is said to occur at the moment the counterfeit check is

---

[13] *See, e.g., United States v. Ramirez,* 420 F.3d 134, 143 (2d Cir. 2005) (quoting *United States v. Saavedra,* 223 F.3d 85, 93 (2d Cir. 2000), for the proposition that "while the substantial contacts test is not a 'formal constitutional test,' a court should consider whether that test is met in order to determine whether a given venue is 'unfair or prejudicial' to the defendant."); *United States v. Smith*, 641 F.3d 1200, 1208-09 (10th Cir. 2011) (rejecting application of substantial contacts test and interpreting Second Circuit decision in *Ramirez* as limiting the test to continuing offenses).

34

uttered to the bank. *See United States v. Rodriguez,* 465 F.2d at 10-11 (opining that the offense is "complete when the instrument is offered."); *see also United States v. Bowens*, 224 F.3d at 309 ("[V]enue is limited to the place where the essential conduct elements occur, without regard to the place where other essential elements of the crime occur."). Because the essential conduct element occurred in North Carolina, the "of a State" element does not give rise to venue in the Virgin Islands.[14]

### ii.  The Locus of the Effect of the Criminal Conduct

"'[P]laces that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring.'" *United States v. Muhammad*, 502 F.3d at 654. (citing *United States v. Reed*, 773 F.2d at 482). "[U]nder . . . the language of § 513[,] which explicitly requires the intent to deceive an organization as an element of the offense, the locus of the intended effects of the criminal acts is [the place] from where those checks were stolen and to which they returned for clearance*, the ultimate destination of the deception*, *the location of the organization*." *United States v. Delia*, 749 F. Supp. 500, 504 (S.D.N.Y. 1990) (emphasis added).

The Court agrees with the Government's position that Defendant Allen's alleged forgery scheme victimized Banco Popular in the Virgin Islands. *See* 08/01/2012 Tr. at 82:18-25. The

---

[14]  Regarding the fourth element, the "intent to deceive another person, organization, or government," the Indictment charges Defendant Allen under § 513(a) "with [the] intent to deceive Wachovia Bank" and the Indictment charges Defendant Johnson under § 513(a) "with [the] intent to deceive Woodforest National Bank." Indictment at 2, 3, and 6. Both banks are in North Carolina. Given that "[t]he Government bears the burden of proving venue by a preponderance of the evidence," *United States v. Root*, 585 F.3d at 155, that the Government failed to advance an argument under the fourth element, and that the Government charged Defendants with intent to deceive the respective North Carolina banks, the Court is loath, on this record, to weigh this element in favor of venue in the Virgin Islands.

testimony of Ms. Gutierrez further confirms that, if Defendants' alleged counterfeiting scheme had not been detected, Banco Popular in the Virgin Islands would have been the victimized organization because it would have been the bank required to compensate its account holder. 08/01/2012 Tr. at 85:19-21.

However, given that the essential conduct element of the offense occurred outside the Virgin Islands, the issue is whether, under these circumstances, a defendant may be prosecuted for a single act offense in a district based on the argument that effects of the crime are felt there. Although the Government proffers factual support for its contention of harm in the Virgin Islands, including loss or risk of loss to Banco Popular, it provides no relevant legal authority to support the proposition that the district that suffers the effects of a single act offense may prosecute the defendant there, when the essential conduct element of the offense occurred elsewhere. Accordingly, although effects of the alleged criminal conduct are felt in the Virgin Islands, the Government has not met its burden of showing that, in this context, this factor permits venue in the Virgin Islands.

iii. The Site of the Defendants' Acts

Defendants allegedly possessed and uttered the counterfeited securities in North Carolina. The question before the Court is whether the site of Defendants' alleged utterance of the counterfeit security must also be the "district wherein the crime shall have been committed." U.S. Const. amend. VI.

As here, when a crime consists of a single noncontinuing act, it is "committed" in the district where the act is performed. *See, e.g., United States v. Anderson,* 328 U.S. at 703. The performance of the act is said to occur at the moment the counterfeit check is uttered to the bank. *See United States v. Rodriguez,* 465 F.2d at 10-11 (the § 513(a) offense is "complete when the

36

instrument is offered."). Accordingly, Defendants' alleged acts were performed only in North Carolina because the offense was completed at the moment Defendants allegedly uttered the counterfeit checks. This factor does not, therefore, give rise to venue in the Virgin Islands.

    iv.  The Suitability of Each District for Accurate Factfinding

    The Government argues that "the Virgin Islands is the venue that is most suitable for fact finding, because the lead case prosecutor and case agent reside[] and work[] here" and it is where the representatives of the Juan Luis Hospital and the Banco Popular Branch office are located. Gov.'s Opp. at 8. The Court agrees with Defendant Allen that "[w]here the lead case agent and prosecutor are located is not dispositive." Def. Allen's Reply at 5; *see Travis v. United States,* 364 U.S. 631, 634 (1961) ("[V]enue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it.") (citation omitted). Nonetheless, the Court finds that the District of the Virgin Islands is suitable for accurate factfinding in view of the location in this matter of both the victimized bank and the account holder whose account was the subject of the illegal activity. In so finding, the Court does not deem North Carolina as unsuitable for accurate fact-finding. Nor does the Court deem this factor, standing alone, as sufficient to vest venue in the Virgin Islands, given the Court's analysis of the other factors.

    In view of the foregoing, the Court concludes that the substantial contacts analysis, which is intended to aid in the *locus delecti* determination, leads to the same conclusion as the Court's analysis under the Supreme Court's two-pronged approach—that the Government has failed to prove by a preponderance of the evidence that venue is proper in the Virgin Islands for the §513(a) offense.

### III.  Conclusion

For all of the foregoing reasons, the Court finds that venue is proper in the Virgin Islands for the bank fraud offense under 18 U.S.C. § 1344, and the possession of a stolen security offense under 18 U.S.C. § 2315. However, the Court concludes that venue does not lie in the Virgin Islands for the possession and utterance of a forged and/or counterfeit security offense under 18 U.S.C. § 513(a). Accordingly, Defendants' Motion to Dismiss for Lack of Venue is granted in part and denied in part. An appropriate Order accompanies this Memorandum Opinion.

Date: October 2, 2012

         _____/s/_____
         WILMA A. LEWIS
          District Judge